JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
James Huynh, 5400 Goolsby Way, Fairfax, VA 22030

## DEFENDANTS
Gabonese Republic, Kodzo Massenya, Charles Mbonke, Jean LeGrand

**(b)** County of Residence of First Listed Plaintiff
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant **Montgomery Co., MD**
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Cristopher L. Markham, 751 Rockville Pike, 4A, Rockville, MD 20852
240-422-9301
Bar: 28718

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ❏ 1 U.S. Government Plaintiff
- ❏ 3 Federal Question *(U.S. Government Not a Party)*
- ❏ 2 U.S. Government Defendant
- ☒ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ❏ 1 | ☒ 1 | Incorporated *or* Principal Place of Business In This State | ❏ 4 | ❏ 4 |
| Citizen of Another State | ☒ 2 | ❏ 2 | Incorporated *and* Principal Place of Business In Another State | ❏ 5 | ❏ 5 |
| Citizen or Subject of a Foreign Country | ❏ 3 | ☒ 3 | Foreign Nation | ❏ 6 | ☒ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ❏ 110 Insurance | **PERSONAL INJURY**    **PERSONAL INJURY** | ❏ 625 Drug Related Seizure of Property 21 USC 881 | ❏ 422 Appeal 28 USC 158 | ❏ 375 False Claims Act |
| ❏ 120 Marine | ❏ 310 Airplane    ❏ 365 Personal Injury - | ❏ 690 Other | ❏ 423 Withdrawal 28 USC 157 | ❏ 400 State Reapportionment |
| ❏ 130 Miller Act | ❏ 315 Airplane Product     Product Liability | | | ❏ 410 Antitrust |
| ❏ 140 Negotiable Instrument |     Liability    ❏ 367 Health Care/ | | | ❏ 430 Banks and Banking |
| ❏ 150 Recovery of Overpayment | ❏ 320 Assault, Libel &     Pharmaceutical | | **PROPERTY RIGHTS** | ❏ 450 Commerce |
|     & Enforcement of Judgment |     Slander     Personal Injury | | ❏ 820 Copyrights | ❏ 460 Deportation |
| ❏ 151 Medicare Act | ❏ 330 Federal Employers'     Product Liability | | ❏ 830 Patent | ❏ 470 Racketeer Influenced and |
| ❏ 152 Recovery of Defaulted |     Liability    ❏ 368 Asbestos Personal | | ❏ 840 Trademark |     Corrupt Organizations |
|     Student Loans | ❏ 340 Marine     Injury Product | | | ❏ 480 Consumer Credit |
|     (Excludes Veterans) | ❏ 345 Marine Product     Liability | **LABOR** | **SOCIAL SECURITY** | ❏ 490 Cable/Sat TV |
| ❏ 153 Recovery of Overpayment |     Liability    **PERSONAL PROPERTY** | ❏ 710 Fair Labor Standards | ❏ 861 HIA (1395ff) | ❏ 850 Securities/Commodities/ |
|     of Veteran's Benefits | ❏ 350 Motor Vehicle    ☒ 370 Other Fraud |     Act | ❏ 862 Black Lung (923) |     Exchange |
| ❏ 160 Stockholders' Suits | ❏ 355 Motor Vehicle    ❏ 371 Truth in Lending | ❏ 720 Labor/Management | ❏ 863 DIWC/DIWW (405(g)) | ❏ 890 Other Statutory Actions |
| ❏ 190 Other Contract |     Product Liability    ❏ 380 Other Personal |     Relations | ❏ 864 SSID Title XVI | ❏ 891 Agricultural Acts |
| ❏ 195 Contract Product Liability | ❏ 360 Other Personal     Property Damage | ❏ 740 Railway Labor Act | ❏ 865 RSI (405(g)) | ❏ 893 Environmental Matters |
| ❏ 196 Franchise |     Injury    ❏ 385 Property Damage | ❏ 751 Family and Medical | | ❏ 895 Freedom of Information |
| | ❏ 362 Personal Injury -     Product Liability |     Leave Act | |     Act |
| |     Medical Malpractice | ❏ 790 Other Labor Litigation | | ❏ 896 Arbitration |
| **REAL PROPERTY** | **CIVIL RIGHTS**    **PRISONER PETITIONS** | ❏ 791 Employee Retirement | **FEDERAL TAX SUITS** | ❏ 899 Administrative Procedure |
| ❏ 210 Land Condemnation | ❏ 440 Other Civil Rights    **Habeas Corpus:** |     Income Security Act | ❏ 870 Taxes (U.S. Plaintiff |     Act/Review or Appeal of |
| ❏ 220 Foreclosure | ❏ 441 Voting    ❏ 463 Alien Detainee | |     or Defendant) |     Agency Decision |
| ❏ 230 Rent Lease & Ejectment | ❏ 442 Employment    ❏ 510 Motions to Vacate | | ❏ 871 IRS—Third Party | ❏ 950 Constitutionality of |
| ❏ 240 Torts to Land | ❏ 443 Housing/     Sentence | |     26 USC 7609 |     State Statutes |
| ❏ 245 Tort Product Liability |     Accommodations    ❏ 530 General | | | |
| ❏ 290 All Other Real Property | ❏ 445 Amer. w/Disabilities -    ❏ 535 Death Penalty | **IMMIGRATION** | | |
| |     Employment    **Other:** | ❏ 462 Naturalization Application | | |
| | ❏ 446 Amer. w/Disabilities -    ❏ 540 Mandamus & Other | ❏ 465 Other Immigration | | |
| |     Other    ❏ 550 Civil Rights |     Actions | | |
| | ❏ 448 Education    ❏ 555 Prison Condition | | | |
| |    ❏ 560 Civil Detainee - | | | |
| |     Conditions of | | | |
| |     Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ❏ 2 Removed from State Court
- ❏ 3 Remanded from Appellate Court
- ❏ 4 Reinstated or Reopened
- ❏ 5 Transferred from Another District *(specify)*
- ❏ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 USC Section 1332(a)(2)
Brief description of cause:
Tort Complaint for Damages

## VII. REQUESTED IN COMPLAINT:
❏ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $** 800,000.00

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ❏ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE 5/19/14

SIGNATURE OF ATTORNEY OF RECORD
*Christopher J. Markl*

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)**  **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

   **(b)**  **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

   **(c)**  **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**  **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.**  **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**  **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerk(s) in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.**  **Origin.** Place an "X" in one of the six boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

**VI.**  **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553  Brief Description: Unauthorized reception of cable service

**VII.**  **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**  **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (Southern Division)

| | | |
|---|---|---|
| JAMES HUYNH, | : | |
| 5400 Goolsby Way | | |
| Fairfax, Virginia 22030 | | |
| | : | |
| Plaintiff, | | |
| | | |
| v. | : | CIVIL ACTION NO: |
| | | JURY TRIAL |
| GABONESE REPUBLIC, | : | |
| Boîte Postale 2245, | | |
| Libreville, Gabon | : | |
| | | |
| KODZO MASSENYA, | : | |
| 24 Chelsea Crescent, | | |
| Chelsea Harbor, SW10 OXB | : | |
| | | |
| CHARLES MBONKE, | : | |
| Unknown, | | |
| | : | |
| JEAN LEGRAND, | | |
| Unknown, | : | |
| Montgomery County, Maryland | | |
| | : | |
| Defendants. | | |
| | : | |

## COMPLAINT FOR DAMAGES

**COMES NOW**, Plaintiff James Huynh, by and through his undersigned attorneys, and files this, his Complaint against defendants The Gabonese Republic, Charles Mbonke, Kodzo "Michael" Massenya, and Jean LeGrand (hereafter, when referred to collectively, "Defendants"). In support hereof, Plaintiff alleges as follows:

## PARTIES, JURISDICTION AND VENUE

1. Plaintiff James ("Jimmy") Huynh is a Virginia resident.

2. Defendant Gabonese Republic is a foreign state as defined in 28 U.S.C. §1603 (hereinafter referred to as "Defendant Gabon" or "Gabon").  Defendant Gabon is subject to the jurisdiction of this Court pursuant to 28 U.S.C. §1330.  Under 28 U.S.C. §1605(a)(5), "a foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case in which damages are sought against a foreign state for ... loss of property, occurring in the United States and caused by the tortuous act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment."

3. Defendant Gabon must be served by the Clerk of the Court pursuant to 28 U.S.C. 1608(c) by sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned.  The head of the ministry of foreign affairs for Defendant Gabon is Emmanuel Issoze-Ngondet, and the address for the ministry of foreign affairs is Boîte Postale 2245, Libreville, Gabon.

4. To the best of Plaintiff's knowledge and belief, Defendant Kodzo "Michael" Massenya (hereinafter referred to as "Defendant Massenya") is a resident of the United Kingdom.  Defendant Massenya is subject to the jurisdiction of this Court pursuant to 28 U.S.C. §1332(a)(2).

5. To the best of Plaintiff's knowledge and belief, Defendant Charles Mbonke (hereinafter referred to as "Defendant Mbonke") is a citizen of Gabon and is a resident of Gabon and/or France.  Defendant Mbonke is subject to the jurisdiction of this Court pursuant to 28 U.S.C. §1332(a)(2).

6. To the best of Plaintiff's knowledge and belief, Defendant Jean LeGrand (hereinafter referred to as "Defendant LeGrand") is a resident of the Montgomery County, Maryland. Defendant LeGrand is subject to the jurisdiction of this Court pursuant to 28 U.S.C. §1332(a)(2).

7. Venue for this case is proper in this Court pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to these claims occurred in Maryland.

## STATEMENT OF FACTS

8. Plaintiff Huynh owns roughly four acres of land in Fairfax, Virginia, which Plaintiff had been looking to sell.

9. Plaintiff Huynh first met Defendant LeGrand on or about January 2010 while Plaintiff Huynh was employed at Manhattan's Jaguar & Land Rover/Range Rover of Bethesda at 11617 Old Georgetown Road, Rockville, Maryland 20852.

10. Defendant LeGrand visited Manhattan's Jaguar & Land Rover/Range Rover of Bethesda roughly fifteen different occasions between January 2010 and October 2010. Defendant LeGrand would deal with Plaintiff Huynh on each of these occasions.

11. To the best of Plaintiff Huynh's knowledge and belief, Defendant LeGrand purchased two vehicles from Manhattan's Jaguar & Land Rover/Range Rover of Bethesda during January 2010 and October 2010.

12. Plaintiff Huynh first met Defendant Massenya in August 2010 at Manhattan's Jaguar & Land Rover/Range Rover of Bethesda, the car dealership where Plaintiff Huynh was employed.

13. Defendant Massenya manifested to Plaintiff that he was wealthy as evidenced for example by the car he drove and through conversations with Plaintiff Huynh. Among the topics the two discussed was

4

Defendant Massenya's involvement in the oil and sugar trade business in the United Kingdom. Defendant Massenya expressed interest in property Plaintiff owned in Fairfax County, Virginia, and in other business matters relating to Plaintiff.

14. Defendant Massenya began to frequent Plaintiff Huynh's place of employment with the express purpose to see Plaintiff Huynh.  During a lunch meeting at Bob's Noodle 66 in Rockville, Maryland in December 2010, Defendant Massenya represented to Plaintiff that he knew someone from Gabon in West Africa, the son of the late president of Gabon (Omar Bongo Ondimba), who was interested in purchasing Plaintiff Huynh's property; that person being Defendant Mbonke.

15. On or about January 3, 2011, Defendant Massenya introduced Plaintiff Huynh to Defendant Mbonke at the Bethesda Marriott Suites in Bethesda, Maryland.

16. Defendant Mbonke represented himself to Plaintiff Huynh as the son of the late president of Gabon. Plaintiff Huynh found Defendant Mbonke to be well-spoken, well-dressed and politically informed.

17. Defendant Mbonke represented to Plaintiff Huynh that Defendant Mbonke in fact was working on behalf of the government of the Gabonese Republic.

18. Defendant Mbonke also represented to Plaintiff Huynh he was serving in the capacity of Delegate from Gabon to the United Nations working officially at the U.N. headquarters in New York City.  At this meeting, Defendant Mbonke displayed to Plaintiff Huynh a diplomatic passport issued by the Gabonese Republic in his name.

19. On or about January 19, 2011, Plaintiff met Defendants Mbonke and Massenya at the Bethesda Marriott Suites in Bethesda, Maryland.

20. During the January 19, 2011 meeting, Defendant Mbonke described to Plaintiff Huynh how money could be legally printed using specially produced white paper from the United States Treasury with specific chemicals.

21. Defendants Mbonke and Massenya claimed the special white paper was transported officially from the United States Treasury to the government of Gabon.  Defendant Massenya stated to Plaintiff Huynh this process was officially sanctioned by both governments.

22. Defendant Mbonke stated the Gabon government had received this special white paper from the U.S. Treasury, and that Defendant Mbonke had authorization from the Gabon government to use the white paper.

23. Defendants Mbonke and Massenya performed an initial demonstration of how Defendants Mbonke and Massenya could turn their "white paper" into bona fide U.S. currency.

24. Defendants Mbonke and Massenya told Plaintiff Huynh they needed him to give Defendants Mbonke and Massenya $800,000 cash in order for Defendants Mbonke and Massenya to double it, and then pay Plaintiff Huynh for his land with the "white paper" money.

25. At the behest of Defendants Mbonke and Massenya, on or about May 16, 2011, Plaintiff Huynh withdrew $800,000 from his BB&T bank account in Fairfax, Virginia.

26. On or about May 19, 2011, Defendant Mbonke instructed Plaintiff Huynh to meet Defendants Mbonke and Massenya at the Extended Stay Hotel in Gaithersburg, Maryland.

27. Plaintiff Huynh brought $500,000 of the $800,000 with him to the meeting with Defendants Mbonke and Massenya at the Extended Stay Hotel in Gaithersburg, Maryland.  Plaintiff Huynh had placed the remaining $300,000 in a safety deposit box at a Bank of America in Rockville, Maryland.

28. Plaintiff Huynh handed over the $500,000 to Defendants Mbonke and Massenya.  Defendants Mbonke and Massenya inquired about the remaining $300,000, and stated to Plaintiff they needed the entire $800,000 to perform the "white money" transformation.

29. From the meeting on May 19, 2011 at the extended Stay Hotel in Gaithersburg, Maryland, Plaintiff Huynh went by the Bank of America in Rockville, Maryland to obtain the $300,000 he had placed in the safe deposit box.

30. Defendants Mbonke and Massenya and Plaintiff Huynh then proceeded to 9306 Snowhill Estate Lane, Laurel, Maryland, 20708, stated by Defendant Massenya to be Massenya's uncle's house.

31. Plaintiff Huynh gave Defendants Mbonke and Massenya the $300,000 at the aforesaid house in Laurel, Maryland.

32. At Defendant Massenya's aforesaid uncle's house, Defendants Mbonke and Massenya performed the process of turning the white paper into "real money" by using the money Plaintiff Huynh gave to Defendants Mbonke and Massenya.

33. Plaintiff Huynh was instructed to wait in a different room from where Defendants Mbonke and Massenya were performing the "white money" transformation.

34. Eventually, Defendants Mbonke and Massenya informed Plaintiff Huynh that the white paper money had a pinkish tint to it, and they would have to obtain additional chemicals in order to get rid of the pinkish color on the money.

35. At this point, Defendant Massenya stated he was going to let Plaintiff Huynh hold onto both Plaintiff Huynh's real money and the white paper money (with the pinkish color) created by Defendants Mbonke and Massenya.  However, Plaintiff Huynh never actually saw any of the money at this time.  Defendants Mbonke and Massenya supposedly wrapped the real money and white paper money in aluminum foil.

36. Defendant Massenya and Plaintiff Huynh left Defendant Massenya's uncle's house at 9306 Snowhill Estate Lane, Laurel, Maryland, 20708, and proceeded to a Staples office supply store at 1531 Rockville Pike, Rockville, Maryland, 20852, with all the money purportedly wrapped in aluminum foil.

37. Defendant Massenya purchased two Sentry Safes from the Staples office supply store. Defendant Massenya stated to Plaintiff Huynh that the money wrapped in the aluminum foil would be kept in the safe.

38. Defendants Mbonke and Massenya agreed to let Plaintiff Huynh hold onto the safes with the money in them, and Defendant Mbonke would hold onto the combination and keys to the safes.

39. Defendant Mbonke stated to Plaintiff Huynh that Plaintiff Huynh would hold onto the safe with the money in it while Defendants Mbonke and Massenya obtained the necessary chemicals to remove the pinkish color from the white paper money.

40. To the best of Plaintiff's information and belief, and based on representations made to him by Defendant Mbonke, Defendant Mbonke traveled to Paris, France to obtain the necessary chemicals needed to remove the pinkish color from the white paper money.

41. On or about the week of June 13, 2011, Defendant Mbonke contacted Plaintiff Huynh and stated Defendant Mbonke had located the necessary chemicals in Canada.

42. Defendant Mbonke stated to Plaintiff Huynh the chemicals would cost $250,000.

43. Defendant Mbonke stated to Plaintiff Huynh that Defendant Mbonke would provide $150,000 toward the cost of the chemicals and Defendant Massenya would provide $20,000 toward the cost of the chemicals.

44. Defendant Mbonke stated to Plaintiff Huynh that Plaintiff Huynh would need to pay Defendants Mbonke and Massenya the remaining $80,000 toward the cost of the chemicals.

45. Upon information and belief, Defendant Mbonke arranged a meeting between an agent from a Canadian chemical company and Defendant Massenya and Plaintiff Huynh.

46. Upon information and belief, the agent from the Canadian chemical company flew into Reagan National Airport in Crystal City, Virginia, on or about July 10, 2011.

47. Defendant Massenya and Plaintiff Huynh went to Reagan National Airport to meet the Canadian chemical agent.

48. Upon arriving at Reagan National Airport, Defendant Massenya told Plaintiff Huynh to wait in the vehicle and Defendant Massenya went into the terminal to bring the Canadian chemical agent back out to the vehicle Plaintiff Huynh was waiting in.

49. For roughly ten minutes, Plaintiff Huynh, Defendant Massenya, and the Candian chemical agent discussed the cost of the necessary chemicals and then transferred Plaintiff Huynh's $80,000 cash plus Defendant Massenya's $20,000 from Plaintiff Huynh's briefcase to the Canadian chemical agent's backpack.

50. Upon information and belief by Plaintiff Huynh, the Canadian chemical agent's identity was Jean LeGrand, Defendant herein.

51. Defendant Mbonke telephoned Plaintiff Huynh and stated the chemical company received the $100,000, and that Defendant Mbonke would travel to the United States (from Paris) and drive to Canada to pay the additional $150,000 for the chemicals.

52. On or about July 16, 2011, upon information and belief and as related to Plaintiff by Defendant Mbonke, while Defendant Mbonke was driving from the United States to Canada, he was pulled over for speeding.  According to conversations between Defendant Mbonke and Plaintiff Huynh, Defendant Mbonke stated he was detained for 48 hours in the United States, United States Customs confiscated all

Defendant Mbonke's money and chemicals, and was then sent back to France and told he could not return to the United States for at least six months.

53. Defendant Mbonke requested Plaintiff Huynh contact Defendant Massenya and inform Defendant Massenya of Defendant Mbonke's detention and deportation to France.

54. Defendant Massenya met with Plaintiff Huynh once more following the July 10, 2011 meeting with the Canadian chemical agent at Reagan National Airport.  Defendant Massenya met Plaintiff Huynh on July 20, 2011 at Tysons Galleria, 2001 International Drive, McLean, Virginia 22102.

55. Defendants Mbonke and Massenya have maintained telephone contact with Plaintiff Huynh.

56. Plaintiff Huynh has not seen Defendant Massenya since August 2011.  Plaintiff Huynh last saw Defendant Mbonke on May 19, 2011.

## NATURE OF ACTION

57. This civil action seeks damages to remedy the Defendants' theft and fraud upon Plaintiff Huynh.

## FIRST CAUSE OF ACTION:
## CONVERSION

58. Plaintiff realleges paragraphs 1 to 57 as if fully set forth herein.

59. In Maryland, "Conversion is an intentional tort, consisting of two elements, a physical act combined with a certain state of mind. The physical act can be summarized as any distinct act of ownership or dominion exerted by one person over the personal property of another in denial of his right or inconsistent with it … and all who aid, command, assist, or participate in the commission of such unlawful acts are liable … [concerning the] intent element to the tort of conversion … [a]t a minimum, a defendant liable of conversion must have "an intent to exercise a dominion or control over the goods which is in fact inconsistent with the plaintiffs rights." Darcars v. Borzym, 379 Md. 249 (Md., 2004)(*internal citations omitted*).

10

60. Defendants Massenya, Mbonke, and LeGrand have exercised and continue to exercise dominion and control over property rightfully belonging to Plaintiff by not returning his $880,000.

61. Defendant Gabon did aid and assist in the commission of Defendant Mbonke's exercise of dominion and control over the $880,000 rightfully belonging to Plaintiff by providing the white-paper to Defendant Mbonke and by authorizing Defendant Mbonke to act on its behalf.

62. Defendants Massenya, LeGrand, and Mbonke, on behalf of himself and as an agent of Defendant Gabon, demonstrated intent to exercise dominion and control over Plaintiff Huynh's $880,000 by conspiring to take and knowingly taking money from the Plaintiff in furtherance of unlawful acts under the pretense of facilitating a legal method for acquiring $800,000 for the sale of Plaintiff's property.

63. Unbeknownst to Plaintiff Huynh, Defendants Mbonke and Massenya willfully and knowingly planned to deprive Plaintiff Huynh of his money, and had no intention to rightfully purchase Plaintiff Huynh's property.

### SECOND CAUSE OF ACTION:
### FRAUD

64. Plaintiff realleges paragraphs 1 to 63 as if fully set forth herein.

65. Under Maryland law, the elements of Fraud are (1) A false representation; (2) the falsity of which is known by the speaker or made with reckless indifference; (3) made for the purposes of defrauding the injured party; (4) inducing justifiable reliance from the plaintiff; (5) resulting in actual damages to the plaintiff. VF Corp. v Wrexham Aviation Corp. 715 A.2d. 188 (Md. 1997).

66. Defendants Massenya, LeGrand, and Mbonke, on behalf of himself and as an agent of Defendant Gabon, falsely represented to Plaintiff that the actions and methods used to procure money to purchase Plaintiff's property was both legal and designed to serve the legal ends of purchasing Plaintiff's property.

11

67. Defendants Massenya, LeGrand, and Mbonke, on behalf of himself and as an agent of Defendant Gabon, knew at the time of making the false representations that these representation did not truthfully reflect their scheme to convert Plaintiff's $880,000 for their own purposes.

68. Defendants Massenya, LeGrand, and Mbonke, on behalf of himself and as an agent of Defendant Gabon, made these false representations for the purposes of defrauding Plaintiff Huynh out of his rightfully owned $880,000.

69. Defendants Massenya, LeGrand, and Mbonke, on behalf of himself and as an agent of Defendant Gabon, induced Plaintiff Huynh to provide $880,000 in actual United States currency for the purported purpose of being used to make $1,600,000 in legitimate U.S. currency.

70. Plaintiff Huynh justifiably relied upon the assurances of Defendants Massenya, LeGrand, and Mbonke because of their affiliation with Defendant Gabon and seemingly in depth knowledge of legitimate and customary international dealings between governments.

71. Plaintiff Huynh was actually damaged by the actions of Defendants insofar as he has been deprived of the use and control of $880,000.

### THIRD CAUSE OF ACTION:
### CIVIL CONSPIRACY

72. Plaintiff realleges paragraphs 1 to 71 as if fully set forth herein.

73. Under Maryland law, "a civil conspiracy is a combination of two or more persons by an agreement or understanding to accomplish an unlawful act or to use unlawful means to accomplish an act not in itself illegal" that results in damage to a plaintiff. Hill v. Brush Eng'g Materials, Inc., 383 F. Supp. 2d 814, 821 (D. Md. 2005)

74. Defendants Massenya, LeGrand, and Mbonke, on behalf of himself and as an agent of Defendant Gabon, constitute two or more persons.

75. Defendants Massenya, LeGrand, and Mbonke, on behalf of himself and as an agent of Defendant Gabon, worked in concert to complete the unlawful acts of defrauding and converting the sum of $880,000 from the rightful possession of Plaintiff Huynh.

76. The Defendants' civil conspiracy resulted in actual damages to Plaintiff Huynh in the amount of $880,000.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff respectfully prays that the Court grant judgment against the Defendants as follows:

a) award the Plaintiff compensatory damages of $880,000 and punitive damages in amounts to be determined at trial;

b) award reasonable counsel fees and costs; and

c) award such other and further relief as the Court may deem just and proper.

*Respectfully Submitted,*

Christopher L. Markham, Esquire
Bar Number 28718
751 Rockville Pike, 4A
Rockville, Maryland 20852
(240) 422-9301
Attorney for Plaintiff